IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LUCIENA S. GRANT-FLETCHER,      :

    Plaintiff,      :

v.      :      Civil Action No. GLR-12-558

MCMULLEN & DRURY, P.A.,      :

    Defendant.      :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant McMullen & Drury, P.A.'s ("M&D") Motion for Summary Judgment (ECF No. 17) and Plaintiff Luciena S. Grant-Fletcher's Cross-Motion for Partial Summary Judgment (ECF No. 21). This case involves a claim that, in its efforts to collect a debt arising from outstanding assessments Mrs. Fletcher owed to Barnside Condominium Association, Inc. ("Barnside"), M&D violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. (2012).[1]

---

[1] In her Amended Complaint, Mrs. Fletcher also seeks relief pursuant to the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-204 et seq. (West 2012), and the Maryland Consumer Practices Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-301 et seq. (West 2012). The Amended Complaint does not, however, contain specific allegations showing that Mrs. Fletcher is entitled to relief under these provisions, as required by Federal Rule of Civil Procedure 8(a). And, in any event, M&D's Motion only appears to seek review of Mrs. Fletcher's FDCPA claims. The Court's analysis will, therefore, proceed accordingly.

The Amended Complaint appears to assert seven distinct violations under the FDCPA[2]: (1) failing to inform Mrs. Fletcher of the proper time period for requesting validation of debts (Counts I & III); (2) requesting that Mrs. Fletcher telephone M&D if she believed that the debt, or any portion thereof, was erroneous (Count II); (3) failing to disclose that Mrs. Fletcher had the right to dispute a portion of the claimed debt (Count IV); (4) requesting attorney's fees in the amount of $300.00 dollars (Count V); (5) failing to obtain the proper licensure as a collection agency in the State of Maryland (Count VI); and (6) overstating the amount of the debt (Count VII).

The issues have been fully briefed and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2011). For the reasons that follow, M&D's Motion will be granted in part and denied in part. It will be granted as to Counts I, III, IV, V, and VI, but denied as to Counts II and VII. Mrs. Fletcher's Cross-Motion for Partial Summary Judgment on Count VII will be granted.

---

[2] Mrs. Fletcher's Amended Complaint lists various causes of action in bold and underline font, and the purported last cause of action relating to the amount of the debt is merely included as a numbered paragraph under a subheading. (<u>See</u> Am. Compl. ¶ 42, ECF No. 10). For clarity, the Court will reference the respective causes of action by Roman Numeral in the order in which they are presented in the Amended Complaint.

## I. BACKGROUND

Mrs. Fletcher owns a home in Columbia, Maryland, within the residential community known as Barnside. Under the by-laws of the Barnside community, all homeowners are obligated to remit a monthly assessment to Barnside. M&D is a Maryland law firm that engages in general law practice. Richard W. Drury is a shareholder of M&D. Mr. Drury's practice encompasses several areas of general civil litigation, including homeowners and condominium association matters. Barnside is a client of M&D, and, among other things, retains the firm for collection services connected to outstanding homeowners' association dues and fees ("HOA assessments").

In April 2011, Barnside advised Mr. Drury that Mrs. Fletcher had past due HOA assessments that Barnside wished to collect. Mrs. Fletcher had fallen behind on the $175.00 monthly HOA assessments that Barnside required her to pay. Barnside provided Mr. Drury with a copy of the account statement through April 15, 2011, and the related State Department of Assessment and Taxation ("SDAT") property search information. The account statement showed that as of that date, Mrs. Fletcher owed Barnside $365.00.[3]

---

[3] This amount included the $175.00 monthly assessment for March and April 2011, as well as a $15.00 late fee for March. A $15.00 late fee is added on the 16th of each month.

On May 6, 2011, Mr. Drury sent a debt collection letter (the "Letter") to Mrs. Fletcher. In the Letter, Mr. Drury stated the amount due as $1,060.00, $300.00 of which was for "collection fees and expense fees,"[4] and the remainder for missed monthly payments and related late fees. In relevant part, the Letter further provided:

> **This is an attempt to collect a debt and any information obtained will be used for that purpose. If you believe that the debt, or any portion thereof, as stated in the accompanying notice is erroneous or is otherwise not due as claimed, please promptly contact our office. You may contact our office at 410-337-8702. In such event, we will obtain verification of the claimed debt from the Association or its managing agent, if any, and will mail a copy of such verification to you. If you fail to so contact this office within thirty (30) days of receipt of this notice, the stated amount of the debt will be presumed valid. If, however, you request proof of the debt within thirty (30) days, collection efforts will be suspended until the requested verification is mailed to you. Furthermore, upon written request within thirty (30) days of receipt of the original notice of the debt, we will provide the name and address of the original creditor, if different from the current creditor.**
>
> . . . .
>
> If payment is received within thirty (30) days, from the date of this letter, no further legal action will be taken against you and your unit.
>
> Unless payment in the amount of $1,060 is received within thirty (30) days from the date of this letter, the Association intends to create and record a lien against your property. Attached hereto is a Notice of Intention to Create Lien . . . .

---

[4] The parties refer to these as attorney's fees.

(Def.'s Mot. for Summ. J. Ex. 4, at 1-2 ["Debt Collection Letter"], ECF No. 17-5) (emphasis in original).

In addition to the Notice of Intention to Create Lien, the Letter contained a page and a half Notice of Rights (the "Notice") under the FDCPA that appears to be a verbatim recitation of the validation of debts provision in the FDCPA. (Id. at 4-5); see also 15 U.S.C. § 1692g.

Following the Letter, M&D continued its attempt to collect the debt. After not hearing from Mrs. Fletcher, Mr. Drury filed a Statement of Lien with the Circuit Court of Maryland for Howard County on or about September 20, 2011. He then sent a FDCPA-complaint correspondence with an enclosed copy of the lien to Mrs. Fletcher.

After still not having heard from Mrs. Fletcher on December 13, 2011, Mr. Drury informed her in writing of Barnside's intention to file a petition for sale of property and ultimately foreclose. In that letter, he identified a January 15, 2012 deadline for Mrs. Fletcher to bring her account current and stop the foreclosure proceedings. On January 4, 2012, at Mr. Drury's instructions, M&D's receptionist, Nicole Ryan, faxed a copy of Barnside's account statement for the property to Mrs. Fletcher.

Finally, on January 16, 2012, Mrs. Fletcher responded to the December 13 letter by faxing a proposed installment schedule to M&D. In the letter, she expressed a commitment to resolve

her account balance in full by March 15, 2012.  Mrs. Fletcher also followed-up with a voicemail to M&D, reaffirming her desire to resolve the balance in full by March 15.

Sometime thereafter, the record indicates that Mrs. Fletcher obtained legal counsel.  On January 17, 2012, Mr. Drury informed Mrs. Fletcher's counsel that Barnside was agreeable to the proposed schedule and accepted the terms of the payment plan.  Two weeks later, on January 26, 2012, Mrs. Fletcher called M&D to request a copy of her account statement and to inquire about the monthly payment amount.  During that phone call, Mrs. Fletcher spoke with Ms. Ryan, who informed Mrs. Fletcher that she would send her a copy of the account statement.  Ms. Ryan also told Mrs. Fletcher that she believed the payment plan would be implemented.

Less than a month later, on February 22, 2012, Mrs. Fletcher initiated this civil suit seeking relief under the above referenced statutes.  (ECF No. 1).  On May 11, 2012, following M&D's Motion for Summary Judgment, Mrs. Fletcher sought leave to amend her Complaint and filed the amendment that same day.  (ECF No. 10).  Several months later, on October 5, 2012, M&D filed its Motion for Summary Judgment regarding the claims in Mrs. Fletcher's Amended Complaint.  (ECF No. 17).  Mrs. Fletcher filed an Opposition on October 23, 2012, as well as a Cross-Motion for Partial Summary Judgment as to Count VII.

(ECF No. 21).  M&D issued its Reply on November 7, 2012.  (ECF No. 22).

## II. DISCUSSION

### A.  <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson</u>, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case.  <u>Id.</u> at 248; <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001).  Whether a fact is considered to be "material" is determined by the

substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." _Anderson_, 477 U.S. at 248; _Hooven-Lewis v. Caldera_, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. _Anderson_, 477 U.S. at 248. Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. _Celotex Corp. v. Catrett_, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." _Deans v. CSX Transp., Inc._, 152 F.3d 326, 331 (4th Cir. 1998) (quoting _Beale v. Hardy_, 769 F.2d 213, 214 (4th Cir. 1985) (internal quotations omitted)).

**B.**   **Analysis**

**1.   The FDCPA**

The FDCPA protects consumers from abusive and deceptive debt collection practices by debt collectors. _Spencer v. Hendersen-Webb, Inc._, 81 F.Supp.2d 582, 590 (D.Md. 1999) (citing _United States v. Nat'l Fin. Servs., Inc._, 98 F.3d 131, 135 (4th

Cir. 1996)).  The FDCPA covers debt collectors who "regularly collec[t] or attemp[t] to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another."  *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (quoting 15 U.S.C. § 1692a(6)).

"[A] threshold requirement for application of the FDCPA is that the prohibited practices are used in attempt to collect a debt."  *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87–88 (4th Cir. 1994) (internal quotation mark omitted).  The FDCPA prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(2)(A); 15 U.S.C. § 1692e(10).

Section 1692g of the FDCPA requires a debt collector to send a consumer a written notice containing:

> (1) the debt amount; (2) the name of the current creditor; (3) a statement that, if the consumer disputes the debt in writing within 30 days, the collector will send verification of the debt to the consumer; (4) a statement that if the consumer does not dispute the debt within 30 days the collector will assume the debt to be valid; and (5) a statement that the collector will send the name of the original creditor, upon written request within 30 days.

<u>Miller v. Payco-Gen. Am. Credits, Inc.</u>, 943 F.2d 482, 483 (4th Cir. 1991) (citing 15 U.S.C. § 1692g(a)).[5] Because the FDCPA is a strict liability statute, a consumer need only prove one violation to trigger liability. <u>Spencer</u>, 81 F.Supp.2d at 590–91.

In the context of the FDCPA, the verbiage of debt collection letters alleged to be violative of the statute must be analyzed from the perspective of the "least sophisticated debtor." <u>Nat'l Fin. Servs., Inc.</u>, 98 F.3d at 135–36. Although this standard aims to protect gullible consumers, it also "prevents liability for bizarre or idiosyncratic interpretations of the collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." <u>Id.</u> at 136 (citation omitted).

> **a. Counts I & III - Overshadowing the Thirty-Day Period Provided Under FDCPA § 1692g(a)(4)-(5)**

The Court will grant M&D's Motion as to Counts I and III because there is no genuine issue of material fact that M&D

---

[5] Although the Court cites to the appropriate section of the FDCPA, the Court appears to have switched the order of the requirements by placing paragraph "(3)" ahead of paragraph "(4)." To be sure, it its under 15 U.S.C. § 1692g(a)<u>(3)</u> that a debt collector is required to send the consumer a written notice containing a statement that if the consumer does not dispute the debt within 30 days the collector will assume the debt to be valid. While not particularly significant here, the order of the paragraphs will be of consequence in the Court's discussion of Count II <u>infra</u>.

properly informed Mrs. Fletcher of the statutory time period to request debt validation.

Under the FDCPA, if a consumer disputes the debt in writing within the thirty-day period, the collector must halt all collection efforts until it mails verification of the debt to the consumer. Spencer, 81 F.Supp.2d at 593 (citing 15 U.S.C. § 1692g(b)). Sections 1692a(4)-(5) also provide protections if a consumer makes a written request within the thirty-day period: § 1692g(a)(4) allows a debtor to obtain a copy of a debt verification or judgment; and § 1692g(a)(5) allows a debtor to obtain the name and address of the original creditor. See 15 U.S.C. §§ 1692g(a)(4)-(5). The FDCPA requires debt collectors to effectively convey these legal rights to debtors. Miller, 943 F.2d at 484. Thus, "a debt collector does not comply with § 1692g 'merely by inclusion of the required debt validation notice . . . .'" Id. (quoting Swanson v. S. Or. Credit Serv., Inc., 869 F.2d 1222, 1225 (9th Cir. 1988)). Rather, to be effective, "the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." Id. (quoting Swanson, 869 F.2d at 1225) (internal quotation marks omitted).

Collection activities "overshadow[] or contradict[] the validation notice 'if [they] would make the least sophisticated consumer uncertain as to her rights.'" Ellis v. Solomon &

Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010); Glen v. Law Office of W.C. French, No. ELH-11-927, 2012 WL 181496 at *2 (D.Md. Jan. 19, 2012) (citing Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)); see also Rhoades v. W.Va. Credit Bureau Reporting Servs., Inc., 96 F.Supp.2d 528, 532 (S.D.W.Va. 2000) (explaining that it is a "question as to whether the least sophisticated consumer would find the language contradictory or inconsistent, so to leave him confused about his right to dispute the debt"); Talbott v. GC Servs. Ltd. P'shp, 53 F.Supp.2d 846, 852 (W.D.Va. 1999) (same). The least sophisticated consumer is, however, "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Ellis, 591 F.3d at 135.

This Court has held that the language of M&D's Letter regarding a debtor's validation period is consistent with the FDCPA. Specifically, in Long v. McMullen, Drury & Pinder, P.A., No. RDB-10-2776, 2011 WL 4458849, at *4 (D.Md. Sept. 23, 2011), this Court granted summary judgment to M&D because the firm's collection letter did not violate the FDCPA, when it stated the debtors had "thirty (30) days from the date of this letter" to validate their debt, rather than precisely replicating the FDCPA's exact language that grants debtors 30 days "from the receipt" of the letter. In that case M&D had attached the Notice

pages that correctly advised the debtor of the proper period. This Court found that M&D's letter did not incorrectly notify the debtors of their rights because, though the language was incorrect in one instance, it was a minor deviation. Id.

The Court also reasoned that such a finding "preserv[es] a quotient of reasonableness and presume[s] a basic level of understanding and willingness to read with care on the part of the Plaintiff[]." Id. (quoting Nat'l Fin. Servs., Inc., 98 F.3d at 136 (4th Cir. 1996)) (alterations in original) (internal quotation marks omitted); see also Stojanovski v. Strobl & Manoogian, P.C., 783 F.Supp. 319, 323 (E.D.Mich. 1992) ("The fact that the letter asserts that plaintiffs, if they dispute the debt, should so advise defendant 'within 30 days of the date of this letter,' instead of within 30 days of receipt of the letter, as provided in the Act, is such an insignificant variation from the statutory language, that the court cannot fairly constitute this de minimis variance as an abusive debt collection practice."); but see Glen, 2012 WL 181496, at *4 (noting that if defendant's collection letter had required a response within 30 days of the date of the letter, the defendant would have violated § 1692g(a)(3) and curtailed the debtor's rights);[6] Cavallaro v. Law Office of Shapiro & Kreisman, 933

---

[6] While the Long case predates Glen by several years, the Court did not conduct an analysis of the holding in Long or its

13

F.Supp. 1148, 1154 (E.D.N.Y 1996) (declining to follow
Stojanovski on the grounds that a de minimis variation from
§ 1692g(a)(3) is a violation because the statute is strict
liability).[7]

Here summary judgment for M&D is appropriate on this claim
because there is no genuine issue of material fact that M&D's
letter did not violate § 1692g(a) by failing to inform Plaintiff
of her statutorily granted validation period. The language of
M&D's debt collection letter is identical to what this Court
analyzed in Long, verbatim. As this Court has already found the
Letter to comply with the validation period notification
requirements of § 1692, Mrs. Fletcher's argument is without
merit. Rather, the variation in language is insignificant and
supplemented by the proper language in the notice. The Court
will, therefore, grant M&D's Motion as to Counts I and III.

### b. Count II - Overshadowing the Writing Requirement Under FDCPA § 1692g(a)(3)

M&D's Motion for Summary Judgment as to Count II will be
denied because there is a genuine dispute of material fact that

---

adoption of Stojanovski. Glen also does not express an opinion
as to whether a violation would still result where, as here, the
defendant had attached to the Letter a Notice with the verbatim
language of FDCPA. Accordingly, this Court finds that Long
should govern.

[7] Long is distinguished from Cavallaro on the basis that the
defendants in Long had attached a FDCPA notice of rights to the
debt collection letter, whereas the Cavallaro defendants had
not. Long, 2011 WL 4458849, at *4.

M&D's Letter failed to properly inform Mrs. Fletcher of her validation rights by implementing language in the Letter that overshadowed the statutory rights properly set forth in the Notice.

As discussed above, § 1692g(a)(3) requires a debt collector to inform a debtor of his or her right to obtain validation of the debt by disputing the debt within 30 days. 15 U.S.C. § 1692g(a)(3). A debt collector violates this section, though it includes the required debt collection notice, if the collector overshadows the required notice. Miller, 943 F.2d at 484 (quoting Swanson, 869 F.2d at 1225).

Whether a debt collector's instructions to dispute the debt via telephone overshadow the required notice is not a matter of settled law for courts within the Fourth Circuit.[8] At least one court has held, for example, that § 1692g(a)(3) permits a debtor

---

[8] This Court is, of course, aware of a pending appeal before the U.S. Court of Appeals for the Fourth Circuit—a matter of first impression—seeking the Court's guidance on the inverse of this proposition: whether a debt collector violates § 1692g(a)(3) by stating that a consumer's dispute of a debt must be in writing. See Brief of Respondent-Appellee at *10, Clark v. Absolute Collection Serv., Inc., No. 13-1151, 2013 WL 2434219 (4th Cir. June 5, 2013). Indeed, the United States Supreme Court has likewise abstained from ruling on this issue. See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S.Ct. 1605, 1610 n.3 (2010) (noting the split of authority represented by the Sixth and Ninth Circuits, but declining to express a view about whether inclusion of an "in writing" requirement in a notice to a consumer violates § 1692g because the question was not raised on appeal or presented in the petition for certiorari).

to dispute the validity of a debt via telephone. _See_ _Bicking v._
_Law Offices of Rubenstein & Cogan_, 783 F.Supp.2d 841, 845
(E.D.Va. 2011) ("'The plain meaning of § 1692g is that debtors
can trigger the rights under subsection (a)(3) by either an oral
or written 'dispute,' while debtors can trigger the rights under
subsections (a)(4) and (a)(5) _only_ through written dispute.'"
(quoting _Camacho v. Bridgeport Fin., Inc._, 430 F.3d 1078, 1081
(9th Cir. 2005) (emphasis in original)).

Conversely, this Court has previously held that §
1692g(a)(3) does, in fact, contain an inherent writing
requirement. _See_ _Wallace v. Capital One Bank_, 168 F.Supp.2d
526, 529 (D.Md. 2001) (stating that this Court was "persuaded by
the reasoning in _Graziano v. Harrison_, 950 F.2d 107, 111–12 (3d
Cir. 1991), which holds that not requiring a debtor's dispute
under § 1692g(a)(3) to be in writing would make the statutory
scheme incoherent").

The _Wallace_ decision has been reaffirmed by other decisions
of this Court. _See_ _Davis v. R&R Prof'l Recovery, Inc._, 2009 WL
400627, *5 (D.Md. Feb. 17, 2009) (holding that there was no
FDCPA violation when plaintiff was told over the phone that she
could not orally dispute the debt and that she was required to
put the dispute in writing as § 1692(a)(3) contains an inherent
writing requirement); _Glen_, 2012 WL 181496, at *5 (D.Md. Jan.
19, 2012) _report and recommendation adopted by_, 2012 WL 425870,

at *1 (D.Md. Feb. 8, 2012) (holding that debt collector did not violate FDCPA when it sent a letter stating it would not accept an oral dispute and that consumer needed to dispute the debt in writing because the Court had previously held the § 1692g(a)(3) does, in fact, contain an inherent writing requirement).

This Court is not alone in its adoption of Graziano. In Withers v. H.R. Eveland, 988 F.Supp. 942 (E.D.Va. 1997), the court held that an initial communication letter to the consumer violated § 1692g(a)(3) because it did not instruct the consumer to contact the debt collector in writing. Id. at 947. In doing so, the Withers court stated:

> [T]he collection letter instructed [the consumer] to either "contact" the debt collection agency or make payment in full. There is no indication anywhere in the letter whether such "contact" must be in writing or by telephone. Pursuant to § 1692g, however, if a consumer contests a debt by telephone rather than in writing, the consumer will inadvertently lose the protections for debtors set forth in the FDCPA; the debt collection agency would be under no obligation to verify the debt and cease all collection efforts as required by § 1692g(b).
>
> Given such contradictory and ambiguous language, an unsophisticated debtor could be easily confused about the response time and forego the protections afforded by the statute. On these facts, the Court will find that the collection letter sent by [defendant] failed to effectively convey the validation notice to Withers.

Id.[9]

---

[9] The core protections provided in § 1692g regarding validation of a debt are acquired only through a written dispute

Other factors to consider when determining whether a request to call overshadows the statutory provisions include the font and placement of the language in question. See Miller, 943 F.2d at 484 (holding that where the front of the collector's form commands the consumer to dispute her debt by phone, and is written with "[s]creaming headlines, bright colors and huge lettering," the form overshadowed and contradicted the consumer's rights); but see Wallace, 168 F.Supp.2d at 529 (holding that a collector did not overshadow where the language, tenor, font, and placement of the challenged sentence inviting the debtor to call the collector with questions do not have the effect of overshadowing or contradicting the other portions of the letter that clearly require a writing for the invocation of rights; and stating that "a debt collector does not violate § 1692g merely by providing a telephone number in the letter containing the debt validation notices." (citing Terran v. Kaplan, 109 F.3d 1428, 1434 (9th Cir. 1997))); see also Turner v. Shenandoah Legal Grp., P.C., No. 3:06CV045, 2006 WL 1685698, at *6 (E.D.Va. 2006) ("A dunning letter is 'overshadowing' when

_____

from the consumer to the debt collector: § 1692g(a)(4) allows a debtor to obtain a copy of a debt verification or judgment, but only if the debtor makes a request "in writing" to the debt collector; § 1692g(a)(5) allows a debtor to obtain the name and address of the original creditor, but only if the debtor makes a request in writing; and § 1692g(b) allows for a temporary or permanent cessation of debt collection communications by the debt collector only if the debtor makes the written requests outlined in 1692g(a)(4) and (5).

its manner of presentation, including, but not limited to, differences in typeface, font size, ink color, or location of the validation notice, tends to mislead the consumer into disregarding the notice. A dunning letter is also contradictory when one part of the letter contradicts information contained in another segment, including the validation notice, a circumstance that also tends to mislead the least sophisticated consumer . . . .").[10]

Here, the Notice M&D attached to the Letter did inform Mrs. Fletcher of her statutory rights, but the language in the beginning paragraph of the Letter clearly overshadowed the Notice. The language in the Letter would confuse the least sophisticated consumer about whether he or she acquired the statutory protections of § 1692g by disputing the debt by telephone.

The language in M&D's Letter went beyond informing Ms. Fletcher that she <u>could</u> call with questions, but rather, in bolded font, appears to <u>require</u> a phone call:

> **If you believe that the debt, or any portion thereof, as stated in the accompanying notice is erroneous or is otherwise not due as claimed, please promptly contact our office. You may contact our office at 410-337-8702. In such event, we will obtain verification of the claimed debt from the Association**

---

[10] A so-called "dunning letter" is merely industry jargon for a debt collection letter. (<u>See</u> Am. Compl. ¶ 11); <u>see also</u> <u>Nat'l Fin. Servs., Inc.</u>, 98 F.3d at 133 (referring to collection notices as "dunning letters").

**or its managing agent, if any, and will mail a copy of such verification to you.** <u>**If you fail to so contact this office**</u> **within thirty (30) days of receipt of this notice, the stated amount of the debt will be presumed valid.**

(Debt Collection Letter at 1) (emphasis added). Mrs. Fletcher argues that if the words "so contact" have any meaning, they refer to the phone call and plainly state that a failure to make the phone call will be fatal to the debtor's right to challenge the debt. This Court agrees. In addition, the bolded language suggesting a telephone dispute was the very first paragraph of the Letter, whereas the Notice was not bolded, and comprised the last two pages of the Letter.

Accordingly, this Court will follow the heretofore uniform adoption of <u>Graziano</u> by other judges on this Court, and hold that M&D's instruction to dispute the debt orally overshadowed the statutory requirements in § 1692g(a)(3). M&D's Motion for Summary Judgment as to Count II will, therefore, be denied.

   **c. Count IV - Failing to Disclose Plaintiff's Right to Dispute Only a Portion of the Debt in Violation of § 1692g(3)-(4)**

The Court will grant M&D's Motion for Summary Judgment as to Count IV because there is no genuine issue of material fact suggesting M&D improperly informed Mrs. Fletcher of her right to dispute the debt in part. Furthermore, Mrs. Fletcher appears to have abandoned this claim.

Sections 1692g(a)(3) and (4) require collectors to send debtors statements conveying that they have a right to dispute any part of the alleged debt. Here, the Notice M&D attached to the Letter clearly informed Mrs. Fletcher of these rights. There was nothing in the correspondence indicating that Mrs. Fletcher could not dispute the debt in part. Further, Mrs. Fletcher appears to have abandoned this argument by not opposing M&D's Motion for Summary Judgment on the issue. See Lawley v. Northam, No. ELH-10-1074, 2011 WL 6013279, at *24 (D.Md. Dec. 1, 2011) (citing Mentch v. E. Sav. Bank, FSB, 949 F.Supp. 1236, 1247 (D.Md. 1997) (holding that failure to address defendant's arguments for summary judgment in opposition brief constituted abandonment of claim)).

Accordingly, M&D's Motion for Summary Judgment as to Count IV will be granted.

### d. Count V – Requesting $300.00 in Attorney's Fees in Violation of § 1692f(1) and § 1692e(2)(B)

The Court will likewise grant M&D's Motion for Summary Judgment as to Count V because there is no genuine issue of material fact that M&D's attempt to collect $300.00 in attorney's fees was authorized by Barnside's by-laws. Furthermore, as with Count IV, Mrs. Fletcher appears to have abandoned this claim.

A collector violates § 1692f(1) by attempting to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Additionally, a collector violates § 1692e(2)(B) by making [t]he false representation of . . . any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. 15 U.S.C. § 1692e(2)(B). It follows that collection of unauthorized and unreasonable attorney's fees may violate these sections. <u>See</u> <u>Spencer</u>, 81 F.Supp.2d at 591. In <u>Spencer</u>, the Court found that an attempt to collect fifteen percent of the debt as attorney's fees, when the agreement authorized attorney's fees, but no attorneys worked on the case, violated § 1692f(1). <u>Id.</u>

In this case, M&D's attempt to collect attorney's fees for work on collecting Mrs. Fletcher's debt was authorized by agreement. Section 4 of Mrs. Fletcher's homeowner association declaration provides that homeowners who do not pay their assessments are liable for "actual costs for collection thereof." (Def.'s Mot. for Summ. J. Ex. 2, at 14 ["Barnside By-Laws"], ECF No. 17-3). The by-laws further provide that that if the association brings legal action or forecloses a lien, the homeowner will owe "interest, costs and reasonable attorney's

fees of not less than twenty percent (20%) of the sum claimed . . . ." (Id. at 15). Thus, the attorney's fees were authorized by the debtor-creditor agreement.

In Mrs. Fletcher's Amended Complaint, she asserts that M&D's claimed attorney's fees do not represent the reasonable or actual time M&D spent on her collection matter. Rather, Mrs. Fletcher asserts that M&D mass produces dunning letters in such a way that obviates the need for attorney's fees, and that she should not, therefore, owe attorney's fees in relation to M&D's work on her collection matter. Mrs. Fletcher also asserts that the fee is "unfair, excessive, unconscionable and contrary" to the Maryland Rules of Professional Conduct. The Court disagrees.

First, it is undoubtedly true that many attorneys use templates in conjunction with their regular work. Secondly, Mr. Drury's fee is, by all accounts, eminently reasonable. Here, Mr. Drury, by affidavit, avers that his customary hourly rate for legal work is $250.00. The record further reflects that Mr. Drury corresponded with Barnside and reviewed the documents they sent him by email before sending the Letter, with attachments, to Mrs. Fletcher. Attorney's fees for $600 would, therefore, amount to 1.5 hours of work. In the Court's judgment, this fee is not unfair, excessive, or unconscionable.

In any event, Mrs. Fletcher's failure to address M&D's arguments for summary judgment of Count V in her opposition brief constitutes abandonment of the claim. Accordingly, M&D's Motion for Summary Judgment on Count V will be granted.

### e. Count VI – Failing to Obtain the Proper Licensure as a Collection Agency in the State of Maryland in Violation of § 1692e(5)

M&D's Motion for Summary Judgment will be granted as to Count VI because there is no genuine issue of material fact as to whether M&D's receptionist is engaged primarily to solicit debts for collection as required by the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. §§ 7-101 et seq. (West 2012).

Violation of the MCALA by engaging in collection activity without the proper collection license violates § 1692e(5) of the FDCPA. Glen, 2012 WL 181496, at *3 (citing Bradshaw v. Hilco Receivables, LLC, 765 F.Supp.2d 719, 729-31 (D.Md. 2011)). The MCALA requires that "a person must have a license whenever the person does business as a collection agency in the State." Md. Code Ann., Bus. Reg. § 7-301. A "collection agency" is a person who "engages directly or indirectly in the business of collecting for, or soliciting from another, a consumer claim[.]" Id. § 7-101(c)(1). MCALA does not, however, apply to a lawyer collecting debt for a client, "unless the lawyer has an employee who: (i) is not a lawyer; and (ii) is engaged primarily to

solicit debts for collection or primarily makes contact with a debtor to collect or adjust a debt through a procedure identified with the operation of a collection agency[.]" Id. § 7-102(b)(9).

Because M&D is not licensed as a debt collector, Mrs. Fletcher could prove a FDCPA violation by showing that M&D violated the MCALA by having non-lawyer employees who either are engaged primarily to solicit debts for collection, or who primarily make contact with a debtor to collect or adjust debts.

In her Amended Complaint, Mrs. Fletcher alleges that M&D's receptionist, Ms. Ryan, meets both criteria. The Amended Complaint does not, however, allege any facts supporting the claim that Ms. Ryan is primarily engaged to solicit debts for collection.

Mrs. Fletcher's Cross-Motion for Partial Summary Judgment is equally barren. In her Cross-Motion, Mrs. Fletcher makes allegations about the contact between herself and Ms. Ryan, referencing her own affidavit and Ms. Ryan's affidavit. None of these allegations suggest that Ms. Ryan initiated contact with Mrs. Fletcher.

Specifically, the record contains allegations that Ms. Ryan "encouraged Plaintiff to call her with any questions," (See Pl.'s Opp'n to Def.'s Mot. for Summ. J & Cross-Mot. for Summ. J. ["Pl.'s Cross-Mot. for Summ. J."] at 3, ECF No. 21) (emphasis

in original), "explained to her the current account ledger," "how the attorneys [sic] fees came about," and "how we could split it in half for January and February. As well as making it a 3 month or 6 month option . . . ." (Id.) (quoting Def.'s Mot. for Summ. J. Ex. 13, at 1 ["Telephone Note"], ECF No. 17-14) (internal quotation marks omitted).

Upon review, Mrs. Fletcher's allegations neither describe an act of debt collection, nor are inconsistent with Ms. Ryan's role as a receptionist. Rather, when taken as true, Mrs. Fletcher's allegations, and the record as a whole, show a phone call that <u>Mrs. Fletcher</u> made to M&D, in which Ms. Ryan explained to Mrs. Fletcher her account statement and M&D's collection procedures. Additionally, these allegations and the record regarding a single phone call cannot possibly show that Ms. Ryan is engaged primarily to collect debt because the phone call represents a brief portion of Ms. Ryan's time. Mrs. Fletcher made no allegations about how Ms. Ryan otherwise spends her time.

Mrs. Fletcher's arguments regarding the propriety of a letter received from Mr. Drury's legal assistant, Hannah Smith, is similarly deficient. In the letter, Ms. Smith states the following:

> Enclosed you will find your most current ledger from the above referenced association. As reflected in this ledger your association fees are past due in

the amount of $1,893.00. The attorney's fees as
accrued in this stage of the collection process are
$300.00. Your balance through February 2011 is
$2,293.00. I understand that once you receive this
ledger, you will proceed with making payments on this
account. Please be advised that if we do not receive
payment in the amount of $2,193.00 by February 23,
2011, we will proceed with collections on your account
without any further notice to you.

Please make you payment in the form of case,
money order, or certified funds made payable to
McMullen & Drury, P.A. and sent to the above address.
Should you have any questions regarding this matter,
please feel free to contact me.

(Pl.'s Cross-Mot. for Summ J. Ex. 2, at 1 ["Smith Collection

Letter"], ECF No. 21-2). This letter, while more closely

approximating the activities of a debt collector, merely

captures but one moment of Ms. Smith's time. As with Ms. Ryan,

Mrs. Fletcher made no allegations about how Ms. Smith otherwise

spends her time. It cannot thus be said that either Mss. Ryan

or Smith are engaged primarily to solicit debts for collection,

or primarily make contact with a debtor to collect or adjust

debts. Accordingly, the Court will grant M&D's Motion for

Summary judgment as to Count VI.

### f. Count VII – Overstating the Amount of Debt in Violation of § 1692e(2)(A)

This Court will deny M&D's Motion, but grant Mrs.

Fletcher's Cross-Motion for Summary Judgment as to Count VII

because there is no genuine issue of material fact that M&D has

not met its burden of establishing that its overstatement of the

debt occurred despite the maintenance of procedures reasonably adapted to avoid any such error.

Section 1692e(2)(A) of the FDCPA prohibits debt collectors from making false representations as to a debts character, amount, or legal status. Jerman, 130 S.Ct. at 1608; 15 U.S.C. § 1692e(2)(A). The FDCPA does not, however, require a plaintiff to establish that the defendant acted with either intent or knowledge that the representation of debt was false. 15 U.S.C. § 1692e(2)(A); See Spencer, 81 F.Supp.2d at 592. Nevertheless, the FDCPA shields debt collectors from liability upon a showing, by a preponderance of the evidence, that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); Jerman, 130 S.Ct. at 1609.

The bona fide error defense is an affirmative defense, for which the debt collector bears the burden of proof. See Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 375 (4th Cir. 2012). Under the bona fide error defense, a debt collector is immune from liability for attempting to collect a debt, provided there is a "colorable factual basis" for a client's claim. See McLean v. Ray, No. 11–1544, 2012 WL 2899319, at *4–5 (4th Cir. July 17, 2012) (unpublished) (holding that lawyer could not be held liable under FDCPA for pursuing litigation to collect allegedly incorrect amount of debt where he relied on the file received

from the creditor and saw no reason to question the facts provided); Amond v. Brincefield, Hartnett & Assocs., P.C., 175 F.3d 1013, 1999 WL 152555 (4th Cir. Mar. 22, 1999) (unpublished table decision) (holding that debt collector lawyers "cannot be held liable for what appears to be an honest dispute regarding the amount of the debt, so long as there exists a colorable factual basis for the higher amount claimed by their client").

The defense applies "in circumstances where a violation of the FDCPA results from other causes, such as a clerical or factual mistake." Long, 2011 WL 4458849, at *5 (quoting Bradshaw, 765 F.Supp.2d at 731). "[A] misrepresentation made by the debt collector solely as a result of inaccurate information provided by its client would be a bona fide error as defined under 15 U.S.C. § 1692k(c)." Sayyed v. Wolpoff & Abramson, LLP, 733 F.Supp.2d 635, 646 (D.Md. 2010) (citing Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1032 (6th Cir. 1992)). In that vein, the debt collector is entitled to rely on its client's representation that the debt is valid, and is not obliged to engage in an independent investigation of the debt. Sayyed, 733 F.Supp.2d at 646 (citations omitted). This rule is not, however, absolute.

This court has previously recognized that, in the face of discoverable error, a debt collector cannot invoke the bona fide error defense. See Young v. Thieblot Ryan, P.A., No. ELH-11-

01562, 2012 WL 6698632, at *6 (D.Md. Dec. 21, 2012) (citing Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1005-07 (9th Cir. 2008) (noting that there is no "reasonable substitute for the maintenance of adequate procedures to avoid future mistakes")).

Said differently, "[t]o qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors, including, but not limited to, errors in calculation and itemization." Reichert, 531 F.3d at 1007 (emphasis added). Ergo, the Ninth Circuit's holding in Reichert that a debt collector's reliance on the creditor's inclusion of attorney's fees in the amount of debt alleged to be owed was not a bona fide error, because the debt collector's blind reliance on the creditor's calculations was not reasonable, where the error in those calculations was discoverable. Id.

In Johnson v. Riddle, the U.S. Court of Appeals for the Tenth Circuit specifically addressed the requirement that the procedures be adapted to avoid the error:

> As the text of § 1692k(c) indicates, the procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector 'maintained'- i.e., actually employed or implemented- procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue.

443 F.3d 723, 729 (10th Cir. 2006); see also Reichert, 531 F.3d at 1006 (adopting Johnson holding regarding the "procedures to be adapted" requirement); Wilhelm v. Credico, Inc., 519 F.3d 416, 421 (8th Cir. 2008) (performing similar analysis).

Based on the Court's research, two cases are perhaps most paradigmatic of the type of evidence of procedures that has been held to be sufficient. First, in Jenkins v. Heintz, the U.S. Court of Appeals for the Seventh Circuit held that evidence of a debt collector's "elaborate procedures" satisfied the debt collector's burden under the bona fide error defense. See 124 F.3d 824, 834-35 (7th Cir. 1997). The procedures included a condition that the creditor verify, under oath, that each charge was accurate, in addition to "the publication of an in-house fair debt compliance manual, updated regularly and supplied to each firm employee; training seminars for firm employees collecting consumer debts; and an eight-step, highly detailed pre-litigation review process to ensure accuracy and to review the work of firm employees to avoid violating the Act." Id. at 834.

Secondly, in Sayyed, this Court found that the debt collector's procedures, though not as elaborate as those employed in Jenkins, also satisfied the debt collector's burden under the bona fide error defense. 773 F.Supp.2d at 647 (holding that established procedures in which the debt collector

31

routinely obtained "the underlying documentation from its client, as well as a sworn affidavit from its client stating that the records were accurate" were "entirely reasonable under the circumstances").

Here, the record shows that M&D overstated the debt and that the error was manifestly discoverable. The Barnside account statement shows that at the time M&D wrote the Letter on May 6, requesting payment in the amount of $1,060.00, Mrs. Fletcher owed only $555.00. (See Def.'s Mot. for Summ. J. Ex. 3, at 2 ["April Account Ledger"], ECF No. 17-4). Adding to that the $300.00 in attorney's fees, the debt would have been only $855.00. In the Notice of Intention to Create Lien that M&D attached to the Letter, the stated assessment of $760.00 includes "Assessments through June 2011." (Debt Collection Letter at 3). Thus, assuming the attorney's fees comply with the FDCPA, M&D overstated Mrs. Fletcher's debt in the amount of $205.00 by including fees that were not yet due.

Whether this overstatement qualifies as a bona fide error within the scope of § 1692k is a question of fact. As noted above, M&D must show by a preponderance of the evidence that the error (1) was not intentional, (2) resulted from a bona fide error, and (3) occurred notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Mr. Drury contends that at the time he drafted the Letter, he relied

upon (1) an account ledger updated through April 15, 2011, (2) real property data for the property in question, and (3) information provided by the creditor after he consulted with Barnside to determine the amount of the debt presently owed.

As an initial matter, the Court agrees that M&D's error was not intentional because there is no indication M&D intended to violate the FDCPA. This by itself, however, is not sufficient to entitle M&D to a bona fide error defense. The defense also requires M&D to show that it maintains reasonably adapted procedures to avoid such errors. In the present case, none of the measures recited by M&D demonstrate any procedures that it had at the time the error occurred that were reasonably adapted to avoid the specific error at issue.

Unlike the defendants in Jenkins and Sayyed, M&D has not alleged that its procedures included obtaining a verification of the sum of the debt, under oath, from the creditor. Accordingly, M&D's reliance on Sayyed is misplaced. In its Motion, M&D cites Sayyed for the proposition that "a misrepresentation made by the debt collector solely as a result of inaccurate information provided by its client would be a bona fide error as defined under 15 U.S.C. § 1692k(c)." Sayyed, 733 F.Supp.2d at 646.

Based on the Court's review of the record, the overstatement of the debt does not appear to be the result of inaccurate information provided by Barnside. To be sure,

Barnside's account ledger updated through April 15, 2011, upon which M&D claims to have relied, clearly shows the outstanding debt to be $365.00. Adding to this the $15.00 late fee for April and the $175.00 monthly assessment for May would have brought the total to $555.00 as of May 6—the date the Letter was drafted. In the Court's judgment, a perfunctory review of the account ledger would have revealed this discoverable error hiding in plain sight.

Accordingly, the Court will deny M&D's Motion, but grant Mrs. Fletcher's Cross-Motion for Summary Judgment as to Count VII.

### III. CONCLUSION

For the foregoing reasons, this Court, will, by separate order, grant M&D's Motion for Summary Judgment (ECF No. 17) as to Counts I, III, IV, V, and VI; deny M&D's Motion as to Counts II and VII; and grant Mrs. Fletcher's Cross-Motion for Summary Judgment (ECF No. 21) as to Count VII.


Entered this 8th day of August, 2013

/s/

_____
George L. Russell, III
United States District Judge